JOHN MUZZEY, *Appellant*, *versus* OLIVER H. DAVIS.

The plaintiff, owning a lot of land in Portland, in 1820, purchased the necessary materials, including granite curbstones, and, with the consent of the city authorities, constructed, at his own expense, a sidewalk in front of his premises. In 1865, the city constructed a drain culvert under the outer edge of the sidewalk, and, for that purpose, took up the said curbstones, substituting others, and sold the former, the defendant assisting in carrying them away; — *Held*, that the defendant was liable to the plaintiff, in trespass, for the value of the curbstones.

The dedication of the use of a sidewalk to the public, for the purpose of passing over it, is not shown to be complete without proof of an acceptance.

ON FACTS AGREED.

TRESPASS *de bonis asportatis* for sundry curbstones.

In the year 1820, the plaintiff being the owner of a lot of land on the corner of High and Danforth streets, in Portland, purchased the necessary materials, including the granite curbstones in controversy, and, with the consent of the proper authorities, constructed, at his own expense, a sidewalk in front of his said premises, — which has remained to the present time.

In the month of August, 1865, the city of Portland constructed a drain culvert under the outer edge of said sidewalk; and, for that purpose, took up the stones in controversy, and substituted others. The city then sold the stones in controversy, — and the defendant assisted in carrying them away. In what the city did, they acted through their proper officers.

If, upon the facts, the plaintiff could recover, judgment should be entered in his favor, and the damages to be assessed by the Court; otherwise judgment to be entered for the defendant.

*Davis & Drummond*, for the defendants.

If one annexes anything to the realty of another, in such manner that it becomes a part thereof, it at once becomes the property of the latter. " *Quicquid plantatur solo, solo*

*cedit."* *Elmes* v. *Marr*, 3 East, 38. If the soil of the street did not belong to the plaintiff, he lost all property in the materials put into the sidewalk.

If his land extended to the middle of the street, by constructing the sidewalk, he dedicated it to the public. The construction of the sidewalk was done with the consent of the proper authorities, and has all the elements of dedication. Building a bridge on a public highway, is *ipso facto*, a dedication. *Springfield* v. *Co. Commissioners*, 10 Pick., 59.

If a man builds a house on land of another, the builder is presumed to have intentionally transferred his property in the materials to the owner of the soil; and, if the owner of the soil tear down the house and sell the materials, the builder cannot maintain trespass therefor. Broom's Legal Maxims, 355. (Am. ed. 269.)

If the dedication is limited to the purposes and objects for which it was made, it includes the liability and consequent right of the city to keep the whole way, including the sidewalk, in repair. When repaired, who owns the repairs? If an old brick is taken out and a new one substituted, does the city own the new one and the plaintiff the remainder?

In *Harrison* v. *Parker*, 6 East, 154, the bridge dedicated was built upon the land of the plaintiff, and he might well maintain an action for plank taken therefrom by a wrongdoer. That case not applicable to case at bar.

When a bridge is erected on a highway and dedicated to the public and accepted, the dedication carries with it all the incidents, in every respect, of one built by the public authorities. The right of making repairs and converting the old materials replaced with the new, are incidents.

The qualification of the transfer of the property in the materials must correspond with the purpose for which the dedication was made; and, by constructing the sidewalk in the highway, the plaintiff transferred such a property in the materials as gave the public, and all third parties, the same

rights as they would have in a sidewalk constructed by the public authorities, he retaining no more rights in it than if it had been so constructed.

*J. & E. M. Rand,* for the plaintiff.

DANFORTH, J. — The case finds that the curbstones in controversy were originally the property of the plaintiff. It is a fundamental principle of law, that he can be divested of that property only by his own consent, or by due process of law. In this case it is not pretended that it has been taken from him by any process of law. The only question, then, involved in the case, is one of fact. Has he ever consented to part with his property? His ownership having been admitted, the burden of showing a change rests upon the defendant. How and when was this accomplished? It is suggested that, by voluntarily putting his materials into a sidewalk, they became annexed to and a part of the realty. This may be so; but it does not necessarily follow that his property is gone. The defendant does not claim title in himself, as the owner of the land; nor does the case show that any person other than the plaintiff is the owner. On the other hand, it does show that the plaintiff was "owner of a lot of land on High and Danforth streets, and constructed the sidewalk in front of his premises." In such case, in the absence of all proof to the contrary, the legal presumption is, that he owns to the middle of the street, and that he built the sidewalk upon his own land. By such an act, he surely does not part with any title to his property.

It is further suggested that the plaintiff dedicated his property to the public. But where is the proof of this? It is true the case finds that with the stones he built a sidewalk, which, it is to be expected, the public would use; but he built it in front of his own premises, and might well have done so for his own convenience, or to gratify his own taste. There is nothing in the case to show that he might not have taken it up at any time he chose; and it is not to

be presumed that he dedicated it to the public, unless the circumstances lead to that conclusion. The fact that it was in the street, would undoubtedly authorize the public to pass over it, but would not necessarily authorize the inference of a grant of the property itself.

But, if we should infer a dedication, it can only be a dedication of the use for the purpose of passing over it, and, before that dedication could become complete, there must be proof of an acceptance. There is, however, no such proof in this case. It does not appear that any repairs had ever been made by the city, or that the city had exercised over it any acts of ownership whatever, up to the time of the alleged trespass. But, if it were otherwise, and perhaps, in any event, so long as the walk was in the street, the city would undoubtedly be bound to keep it safe and convenient for travellers. This, of course, would give them the right to repair, with all its incidents. It may be conceded, even, that the city had the right, not only of repairing, but to make changes in the location of the materials, taking them from one place and using them for repairs in another. But it is to be borne in mind that the act complained of was not one of repair, nor were the materials taken used for the purposes of repair; they were simply taken away and sold; an act which the city could not authorize, even in the case of a legally located street. The utmost limit to which they could go would be to take material and perform such acts as may be necessary for repairs. *Adams* v. *Emerson*, 6 Pick., 56.

If any objection had been made to the repairing of the walk by the city, or, if the alleged trespass had grown out of any acts incident to, or done for the purpose of repairing, another and a very different question would have arisen, as to which we now do not indicate any opinion. When such a question arises, the argument of defendant's counsel, drawn from inconvenience, will be entitled to great weight, but it has no applicability to the case before us, as we view it.

Another suggestion entitled to consideration, and which

appears to be decisive of the case, is that, if there was a dedication to the public, the act of the defendant was not only inconsistent with the right of use, which the public had, but was entirely subversive of it. If done by authority, it would operate as a legal discontinuance of it. If done without authority, it was no less an actual discontinuance, and, when the rights of the public cease, the property would revert to the original owner.

· *Defendant defaulted, to be heard in damages.*

APPLETON, C. J., KENT and WALTON, JJ., concurred.
TAPLEY, J., concurred in the result.